**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SETH FERRANTI, | : | |
| | : | Civil Action No. 03-1428 (FLW) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| K.M. WHITE, Warden,[1] | : | |
| | : | |
| Respondent. | : | |

**APPEARANCES:**

Petitioner pro se
Seth Ferranti
#13205-083
F.C.I. Gilmer
P.O. Box 6000
Unit B3
Glenville, WV 26351

Counsel for Respondent
Paul A. Blaine
Assistant U.S. Attorney
Camden Federal Building
401 Market Street
4th Floor
Camden, NJ 08101

**WOLFSON**, District Judge

Petitioner Seth Ferranti, a prisoner formerly confined at the Federal Correctional Institution at Fairton, New Jersey, has submitted a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241,[2] challenging the results of a prison disciplinary proceeding. The sole respondent is Warden K.M. White.

---

[1] Pursuant to Fed.R.Civ.P. 25(d)(1), the current Warden Jonathan C. Miner is automatically substituted as the respondent in place of former Warden White.

[2] United States Code Title 28, Section 2241, provides in pertinent part:
   (a) Writs of habeas corpus may be granted by the ... district courts ... within their respective jurisdictions ...
   (c) The writ of habeas corpus shall not extend to a prisoner unless- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

For the reasons set forth below, the Petition will be denied.

## I.   BACKGROUND

On August 28, 1991, in the U.S. District Court for the Eastern District of Virginia, Petitioner was convicted of engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848.  After staging a suicide and living, as a fugitive, under several false identities, Petitioner was arrested in October 1993, and sentenced on December 17, 1993, to serve a sentence of 292 months imprisonment on the continuing criminal enterprise conviction.  Petitioner also pleaded guilty to other offenses committed while he was a fugitive, including carrying on a mail fraud scheme through the use of fictitious names, in violation of 18 U.S.C. §§ 1342 and 2.  As a result of these additional convictions, Petitioner is serving an aggregate sentence of 304 months imprisonment.

The disciplinary sanction at issue in this action arises out of a routine prison inspection of outgoing unsealed inmate mail on June 11, 2002.  (Answer, Ex. 1a, Incident Report No. 1000153.) Officials confiscated an envelope from Petitioner addressed to Michael Santos, who is actually an inmate confined at FCI Fort Dix, at a street address in Seattle, Washington.  Upon further inspection, officials determined that the envelope contained four articles written by Petitioner, one of which was entitled "Paper

Tripping: How to Get Real Fake ID." This article detailed how to obtain many types of false identification and government documentation--including birth certificates, social security cards, and driver's licenses--as well as how to avoid being caught in these illegal activities. In substance, the article detailed the process of stealing identities that Petitioner had employed during the time he was a fugitive and that had resulted in conviction and confinement for carrying on a mail fraud scheme through the use of fictitious names.

Petitioner was charged in Incident Report No. 1000153, dated June 11, 2002, with several disciplinary code violations, including Code 219 (stealing), Code 314 (counterfeiting or forging any documents), and Code 406 (unauthorized use of the mail). On that same day, Petitioner was provided a copy of the report and was advised of his rights. Two days later, the Unit Disciplinary Committee ("UDC") conducted a hearing, at which Petitioner admitted that he wrote the article but denied stealing or forging any documents and said he thought he had not violated any disciplinary code. Due to the seriousness of Petitioner's alleged violation and the fact that a sanction was pending from a previous violation, the UDC referred the matter to the Discipline Hearing Officer ("DHO").

The DHO hearing was held on June 18, 2002. Petitioner declined the assistance of a staff representative and the

opportunity to call witnesses.  Petitioner admitted that he had written the article and that he had attempted to send it indirectly to another prisoner, who was writing a book and was going to review Petitioner's articles for possible publication. As evidence, the DHO also considered the article, its envelope, and a copy of Petitioner's personal resume, which Petitioner had provided to show the DHO his aspirations to be a writer.

The DHO concluded that Petitioner had violated Code 314 (counterferiting/forgery) and Code 406 (unauthorized use of the mail).  The DHO reasoned, with respect to the Code 314 violation:

> This is clearly a correctional management concern since the Bureau of Prisons has an obligation to protect the public and stop illegal activity by inmates.  Allowing an inmate to write articles that tell other people how to break the law without getting caught is not protecting the public.  The DHO finds you did commit the prohibited act of attempted aiding of another person to commit fraud by providing instructions on [how] to forge documents and articles of identification, Code 314.

(Answer, Ex. 1, Discipline Hearing Officer Report.)

As a sanction, the DHO disallowed 14 days of good time credits, and imposed 7 days of disciplinary segregation.

Petitioner's administrative appeals were denied.  Having exhausted his administrative remedies, Petitioner filed this § 2241 Petition.

Here, Petitioner contends that the disciplinary proceeding violated his due process rights in two particulars:  (1) the Code 314 offense is so vaguely defined that he had insufficient notice

that his actions might constitute a violation and (2) the charge against him was improperly amended, to specify "attempted aiding" of a Code 314 violation, during the administrative appeal process.  He seeks, as relief, reinstatement of the good time credits disallowed as a sanction for the Code 314 violation.

II.   LEGAL STANDARD

"Habeas corpus petitions must meet heightened pleading requirements."  McFarland v. Scott, 512 U.S. 849, 856 (1994).  A petition must "specify all the grounds for relief" and must set forth "facts supporting each of the grounds thus specified."  See Rule 2(c) of the Rules Governing § 2254 Cases in the U.S. District Courts (amended Dec. 1, 2004) ("Habeas Rules"), made applicable to § 2241 petitions through Rule 1(b) of the Habeas Rules.

Nevertheless, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

III.   ANALYSIS

A.   Jurisdiction

A habeas corpus petition is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement, Preiser v. Rodriquez, 411 U.S. 475, 498-99 (1973), including challenges to prison disciplinary proceedings that affect the length of confinement, such as deprivation of good time credits, Muhammad v. Close, 540 U.S. 749 (2004) and Edwards v. Balisok, 520 U.S. 641 (1997). See also Wilkinson v. Dotson, 125 S.Ct. 1242 (2005). Habeas corpus is an appropriate mechanism, also, for a federal prisoner to challenge the execution of his sentence. See Coady v. Vaughn, 251 F.3d 480, 485-86 (3d Cir. 2001); Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1990). In addition, where a prisoner seeks a "quantum change" in the level of custody, for example, where a prisoner claims to be entitled to probation or bond or parole, habeas is the appropriate form of action. See, e.g., Graham v. Broglin, 922 F.2d 379 (7th Cir. 1991) and cases cited therein.

To the extent a prisoner challenges sanctions affecting his conditions of confinement, however, such claims must be raised by way of a civil rights action. See Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002). Where a favorable outcome necessarily would imply the invalidity of the length of a prisoner's sentence, such claims do not accrue until the sanction has been invalidated

through reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.  See Heck v. Humphrey, 512 U.S. 477 (1994).  Thus, this Court can award no relief related to those sanctions that do not affect the length of Petitioner's sentence.

B.   Petitioner's Claims

Convicted and sentenced prisoners retain the protections of the Due Process Clause of the Fifth and Fourteenth Amendments that the government may not deprive them of life, liberty, or property without due process of law.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Haines v. Kerner, 404 U.S. 519 (1972); Wilwording v. Swenson, 404 U.S. 249 (1971).  Such protections are, however, "subject to restrictions imposed by the nature of the regime to which [prisoners] have been lawfully committed. ...  In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application."  Wolff, 418 U.S. at 556.

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or from state or federal law.  See Hewitt v. Helms, 459 U.S. 460,

466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

Where the government has created a right to good time credits, and has recognized that a prisoner's misconduct authorizes deprivation of the right to good time credits as a sanction,[3] "the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." Wolff, 418 U.S. at 557.

1.   The Vagueness Claim

"It is a basic principle of due process that a law is void for vagueness if its prohibitions are not clearly defined." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972).  In the context of prison regulations, "[d]ue process undoubtedly requires certain minimal standards of specificity in prison regulations, but we reject the view that the degree of specificity required of such regulations is as strict in every instance as that required of ordinary criminal sanctions."

---

[3] The Constitution itself does not guarantee good time credits for satisfactory behavior in prison.  Congress, however, has provided that federal prisoners serving a term of imprisonment for more than one year, other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of their sentence based upon their conduct.  See 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20.

<u>Meyers v. Aldredge</u>, 492 F.2d 296, 310 (3d Cir. 1974). Thus, "vagueness principles must be applied in light of the legitimate needs of prison administration." <u>Id.</u> at 311. Because "legalistic wrangling" over the meaning of prison rules "may visibly undermine the [prison] administration's position of total authority," federal courts have deferred to the interpretation of those rules by prison authorities "unless fair notice was clearly lacking." <u>Hadden v. Howard</u>, 713 F.2d 1003, 1008 (3d Cir. 1983) (quoting <u>Meyers</u>, 492 F.2d at 311).

Here, Code 314 prohibits activities constituting "[c]ounterfeiting, forging or unauthorized reproduction of any document, article of identification ... or official paper." 28 C.F.R. § 541.13. In addition, "[a]iding another person to commit any of these offenses, [or] attempting to commit any of these offenses, ... shall be considered the same as a commission of the offense itself. In these cases, the letter 'A' is combined with the offense code." 28 C.F.R. § 541.13(b).

In the circumstances presented here, there can be no doubt that the language of Code 314 and § 541.13(b) are sufficient to provide "fair notice," to a person convicted of carrying on a mail fraud scheme through the use of fictitious names, that the attempt to publish an article describing how to conduct such a scheme is prohibited. Petitioner is not entitled to relief on his "vagueness" claim.

2.  <u>The Amended DHO Report</u>

The procedural due process requirements applicable to prison disciplinary proceedings are well established.  A prisoner is entitled to an impartial disciplinary tribunal, <u>Wolff</u>, 418 U.S. at 570-71, excluding "only those [prison] officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body," <u>Meyers v. Alldredge</u>, 492 F.2d 296, 306 (3d Cir. 1974).

To comply with the requirements of the Due Process Clause, prison officials also must provide a prisoner facing loss of good time credits with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals,[4] and (3) a written statement by the factfinders as to the evidence relied on and the

---

[4] Prison officials must justify their refusal to call witnesses requested by the prisoner, but such justification need not be presented at the time of the hearing.  To the contrary, the explanation for refusal to call witnesses requested by the prisoner may be provided through court testimony if the deprivation of a liberty interest is challenged because of that claimed defect in the hearing. <u>See</u> <u>Ponte v. Real</u>, 471 U.S. 491 (1985).  "{P]rison officials may deny a prisoner's request to call a witness in order to further prison security and correctional goals.  ...  [T]he burden of persuasion as to the existence and sufficiency of such institutional concerns is borne by the prison officials, not by the prisoners." <u>Grandison v. Cuyler</u>, 774 F.2d 598, 604 (3d Cir. 1985).

reasons for the disciplinary action.  <u>Wolff</u>, 418 U.S. at 564-66. Prisoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings.  <u>Id.</u> at 569-70.  Where an illiterate inmate is involved, or the complexity of the issue makes it unlikely that the inmate involved will be able to collect and present the evidence necessary for an adequate comprehension of the case, the prisoner should be permitted to seek the aid of a fellow inmate or appropriate staff member.  <u>Id.</u> at 570.

Finally, due process requires that findings of a prison disciplinary official, that result in the loss of good time credits, must be supported by "some evidence" in the record. <u>Superintendent, Massachusetts Correctional Institution at Wolpole v. Hill</u>, 472 U.S. 445, 454-56 (1985).[5]

The Court construes Petitioner's challenge to the amendment of the DHO Report during the administrative appeal process, to reflect the charge as "attempted aiding" of a Code 314 violation, as a claim that he did not receive the required advance notice of the charges against him.  In fact, prison regulations provide that attempted aiding is treated the same as commission of the

---

[5] The due process requirements of <u>Wolff</u>, as they relate to federal prisoners, have been codified in the Code of Federal Regulations at 28 C.F.R. § 541.10 et seq.  <u>See</u>, <u>e.g.</u>, 28 C.F.R. § 541.14 (Incident report and investigation); 28 C.F.R. § 541.16 (Establishment and functioning of the Discipline Hearing Officer); 28 C.F.R. § 541.17 (Procedures before the Discipline Hearing Officer).

11

offense itself.  Petitioner does not dispute any of the operative facts regarding his authorship and mailing of the article and he does not explain how a more precise charge of "attempted aiding" at the hearing itself would have affected his defense against the amended charge.  In addition, the DHO Report found Petitioner guilty of attempted aiding of a Code 314 violation.  Thus, it does not appear that Petitioner suffered any actual lack of notice.

    Moreover, procedural errors in the prison discipline process are subject to "harmless error" analysis.  See Elkins v. Fauver, 969 F.2d 48, 53 (3d Cir.), cert. denied, 506 U.S. 977 (1992); Hollawell v. Lehman, 1995 WL 447470 (E.D. Pa. July 27, 1995), aff'd, 96 F.3d 1433 (3d Cir. 1996).  See also Powell v. Coughlin, 953 F.2d 744 (2d Cir. 1991) (quoted with approval in Elkins).  To the extent Petitioner did not receive actual notice that the charge against him was "attempted aiding" of a Code 314 violation, the error was harmless.  Petitioner does not dispute the operative facts and it can hardly be disputed that attempted publication of an article describing methods to obtain false identification constitutes attempted aiding of "[c]ounterfeiting, forging or unauthorized reproduction of any document, article of identification ... or official paper."  Petitioner is not entitled to relief on this due process claim.

12

IV. CONCLUSION

For the reasons set forth above, the Petition will be denied.  An appropriate order follows.


 S/Freda L. Wolfson
Freda L. Wolfson
United States District Judge

Dated: September 8, 2005